**IN THE UNITED STATES DISTRICT COURT**

**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | : | |
| **v.** | : | **CRIMINAL NO. 23-302** |
| **VINMAR Y. A. MITCHELL** | : | |

## GOVERNMENT'S PLEA MEMORANDUM

### I.    INTRODUCTION

Defendant Vinmar Y. A. Mitchell was charged by indictment with conspiracy to launder monetary instruments in violation of 18 U.S.C. § 1956(h). The indictment alleges that Mitchell participated in a money laundering scheme that targeted the elderly by informing them that they won the Publisher's Clearing House sweepstakes. To defraud the elderly victims, schemers informed the victims that in order to claim their sweepstakes winnings they had to first pay fees and taxes. The victims were instructed to wire, mail, and deposit money into the bank accounts for defendant Godrey and his co-conspirators. Victims were also instructed to purchase and mail gift cards and cell phones to people around the United States. Mitchell and his co-conspirators then spent the proceeds of the fraud and shared the proceeds with co-schemers.

Mitchell, through his defense counsel, has indicated he would like to plead guilty to Count One of the indictment charging him with conspiracy to launder monetary instruments. A guilty plea hearing has been scheduled for April 21, 2025 at 1:00 p.m.

### II.    PLEA AGREEMENT

Mitchell has agreed to enter into a written plea agreement with the government, a signed copy of which is attached to this Memorandum as Attachment A. The parties will provide the

original signed copy of this guilty plea agreement during the guilty plea hearing. The essential terms of the plea agreement are summarized as follows:

Guilty Count

Under the terms of the agreement, Mitchell has agreed to plead guilty to Count One of the indictment.

Fine, Restitution, and Special Assessment

Mitchell agreed to pay a fine and make restitution of $324,123 as directed by the court. Mitchell also agreed to pay the $100 special victims/witness assessment.

Forfeiture

Mitchell agreed to the forfeiture terms listed in paragraph 9 of the plea agreement where he agreed to forfeit his right, title, and interest in the sum of $19,775, which represents the property involved in the offense charged in Count One.

Guideline Stipulations

The parties agreed to the following stipulations under the Sentencing Guidelines, as stated in paragraph 11 of the plea agreement:

a. The parties agree and stipulate that: the value of the laundered funds is $324,000 and that Mitchell's base offense level is 20 under USSG §§ 2S1.1(a)(2) and 2B1.1(b)(1)(G);

b. The parties agree and stipulate that after a plea of guilty in accordance with the terms of this guilty plea agreement, Mitchell will be convicted under 18 U.S.C. § 1956 and should receive a 2-level upward adjustment under USSG § 2S1.1(b)(2)(B);

c. The parties agree and stipulate that, as of the date of this agreement, Mitchell has timely demonstrated acceptance of responsibility for his offense, making him eligible for a 3-level downward adjustment under USSG § 3E1.1(a) and (b).

### Appellate Waiver

Mitchell has agreed to an appellate waiver as stated in paragraph 14 of the plea agreement.

### Satisfaction with Counsel

Mitchell defendant has agreed that he is satisfied with the legal representation provided by his lawyer; Mitchell defendant and his lawyer have fully discussed this plea agreement; and Mitchell is agreeing to plead guilty because he admits that he is guilty.

## III.   **ELEMENTS OF THE OFFENSE**

### **Count One – Conspiracy to Launder Monetary Instruments 18 U.S.C. § 1956(h)**

To establish a violation of 18 U.S.C. § 1956(h), the government must prove the following elements beyond a reasonable doubt:

1. That an agreement was formed between two or more people; and

2. That the defendant knowingly became a member of the agreement.

*United States v. Greenidge*, 495 F.3d 85, 100 (3d Cir. 2007); *see also United States v. Fallon*, 61 F.4th 95 (3d Cir. 2023) (to prove a conspiracy to commit concealment money laundering, the Government must prove that there was an agreement that if completed, would satisfy the elements of the underlying substantive offense; so to prove conspiracy to commit concealment money laundering, it must prove defendants conspiracy to conduct financial transactions involving SUA [specified unlawful activity] proceeds, knowing that the transaction involved

criminal proceeds and that it was designed to conceal or disguise). It is not necessary for the government to prove that an overt act occurred. *See Whitfield v. United States*, 543 U.S. 209, 211 (2005) (when Congress omits an overt act requirement from a conspiracy statute, the common law rule—which does not require proof of an overt act—applies; § 1956(h) does not require proof of an overt act).

The object of the conspiracy was to conceal the nature, location, source, ownership and control of the SUA proceeds in violation of 18 U.S.C. § 1956(a)(1)(B)(i), which requires the government to prove the following elements beyond a reasonable doubt:

1. That the defendant conducted or attempted to conduct a financial transaction, which affected interstate commerce;

2. That the defendant conducted the financial transaction with the proceeds of a specified unlawful activity, that is, wire fraud and mail fraud;

3. That the defendant knew the transaction involved the proceeds of some form of unlawful activity; and

4. That the defendant conducted the transaction with knowledge that the transaction was designed in whole or in part to conceal or disguise the nature, location, source, ownership, or control of the proceeds.

*See* Model Third Circuit Criminal Instruction 6.18.1956A.The government must prove that the defendant knew the property involved in the transaction represented proceeds from some form of unlawful activity that is a felony offense under state, federal, or foreign law. The government is not required to prove that the defendant knew what the unlawful activity was. *See* Model Third Circuit Criminal Instruction 6.18.1956-4.

The elements of wire fraud and mail fraud are:

1. That someone knowingly executed a scheme or artifice to defraud or to obtain money or property by materially false or fraudulent pretenses, representations, or promises;

2. That person acted with the intent to defraud; and

3. That in advancing, furthering, or carrying out the scheme, that person:

   a. [for wire fraud:] transmitted any writing, signal, or sound by means of a wire, radio or television communication in interstate commerce or caused the transmission of any writing, signal, or sound of some kind by means of a wire, radio, or television communication in interstate commerce; or

   b. [for mail fraud:] used the mails or a private or commercial interstate carrier, or caused the mails or a private or commercial interstate carrier to be used.

## IV.  MAXIMUM PENALTIES

The Court may impose the following statutory maximum sentence for Count One (conspiracy to launder monetary instruments) 18 U.S.C. § 1956(h) where the object is a violation of 1956(a)(1)(B)(i) is: 20 years of imprisonment, a three-year term of supervised release, a fine of $500,000 or twice the value of the property involved in the transaction, whichever is greater, and a $100 special assessment. Full restitution shall also be ordered.

In addition, Mitchell's supervised release may be revoked if its terms and conditions are violated. When supervised release is revoked, the original term of imprisonment may be increased. Thus, a violation of supervised release increases the possible period of incarceration and makes it

possible that Mitchell will have to serve the original sentence, plus a substantial additional period, without credit for time already spent on supervised release.

## V.     FACTUAL BASIS FOR THE GUILTY PLEA

If this case were to proceed to trial, the government would introduce evidence to support the following facts, among others:

"Publishers Clearing House" ("PCH") was a company that was famous for offering sweepstakes in which the major prizes could range from $1 million to several million dollars and could include a new car. PCH notified winners of its major prizes in person not by telephone. PCH also did not ask winners to pay taxes or any other up-front fees or pre-payments in order to claim their prizes. However, schemers in Jamaica and the United States devised a plan to defraud elderly adults living throughout the United States by convincing them that they had won the "Publishers Clearing House" sweepstakes prize but that, in order to collect the winnings, they first had to pay the taxes on the winnings and other up-front fees. As part of the scheme, participants in the scheme called elderly victims living in the United States and falsely claimed that they were representatives of PCH. The impostor PCH representatives used a VoIP service to contact victims and mask the callers' identities.

The scheme participants gave the victims instructions about how and to whom to make those payments. The schemers instructed victims to make the phony tax and fee payments for the PCH prize to various individuals, including Mitchell and his co-defendants, Jowayne Godfrey and Ariel Bagalue, who worked with the impostor PCH representatives to launder the victims' payments in multiple, smaller, layered transactions. In total, Mitchell and his co-defendants laundered $324,123 of victims' funds.

The impostor PCH representatives instructed the victims to make their payments in a variety of ways, including by directly depositing cash into specific accounts, mailing a check or cash to a person at a specified address, and buying gift cards and then mailing them to a specified address or providing the card numbers and PIN codes to the schemers over the phone.

Victim 1, D.K., was a resident of Glenolden, Pennsylvania, in Delaware County, and was 89 years old. In or about September 2021, an impostor PCH representative called Victim 1 and informed her that she had won the PCH sweepstakes prize of several million dollars and a Mercedes Benz. The caller said that before the car could be delivered to her, Victim 1 had to pay fees relating to the car. In September 2021, attempting to claim her winnings, Victim 1 sent a total of $10,200 to co-defendant Bagalue's TD Bank account and $10,000 to Mitchell's TD Bank account. Bank records show that after co-defendants Mitchell and Bagalue received Victim 1's funds, they immediately forwarded some of the funds to co-defendant Godfrey. Co-defendant Bagalue forwarded a small amount to Mitchell and an unknown person(s) made several cash withdrawals from Jamaica.

Victim 4, M.J., was a resident of Windsor, Colorado, and was 88 years old. The impostor PCH representative informed Victim 4 and her husband that they had won the PCH sweepstakes in the amount of millions of dollars but needed to make payments in order to claim the prize. At the instruction of the impostor PCH representative, Victim 4 mailed checks, gift cards, and cell phones to people around the United States. On or about July 28, 2020, pursuant to the instructions of the fraudsters, Victim 4 obtained two cashier's checks, each in the amount of $6,200. One of the cashier's checks was made payable to and mailed to co-defendant Godfrey and the other check was made payable to and mailed to Mitchell. Co-defendant Godfrey

deposited the check into his Bank of America account ending in 2839. Shortly after Victim 4's checks were deposited, there were several cash withdrawals made from the accounts in Jamaica, a few CashApp transfers, and Mitchell and co-defendant Godfrey kept the remaining fraud proceeds.

Co-defendant Godfrey communicated with Mitchell and co-defendant Bagalue via WhatsApp and text message. Co-defendant Godfrey informed Mitchell that the fraud proceeds would be sent to him via FedEx and co-defendant Godfrey sent Mitchell the package's tracking numbers. Co-defendant Godfrey also informed Mitchell and co-defendant Bagalue how much of the fraud proceeds they could keep, how much to send to co-defendant Godfrey, and how much to send to others.

The financial transactions affected interstate commerce and involved proceeds of a specified unlawful activity. Finally, the transactions were designed to conceal or disguise the nature, location, source, ownership, or control of the proceeds.

## VI.  Conclusion

This memorandum sets forth only the essential facts necessary to establish the elements of the offense charged. With advice and consent of his attorney, Mitchell has entered into a written guilty plea agreement. Based on these facts, the government respectfully submits that there is a factual basis for Mitchell's guilty plea, and such plea should be accepted.

Respectfully Submitted,

DAVID METCALF
United States Attorney

*s/ Anita Eve*
Anita Eve
Assistant United States Attorney

<u>CERTIFICATE OF SERVICE</u>

I certify that I have caused this document to be sent by email to defense counsel, Elizabeth

Toplin, Esq., Elizabeth_Toplin@fd.org.


<u>/s/ Anita Eve</u>
Assistant United States Attorney

Date: April 21, 2025